590 So.2d 1159 (1991)
GOUDCHAUX/MAISON BLANCHE, INC.
v.
Arnold A. BROUSSARD, Secretary, Department of Revenue and Taxation, State of Louisiana.
No. 91-C-0716.
Supreme Court of Louisiana.
December 2, 1991.
Rehearing Denied January 9, 1992.
Marlon V. Harrison, Baton Rouge, Marlin N. Gusman, New Orleans, for applicant.
David R. Cassidy, Breazeale, Sachse & Wilson, Baton Rouge, for respondent.
MARCUS, Justice.
Goudchaux/Maison Blanche, Inc. (MB) is a Louisiana corporation engaged in retail sales, which files corporate income and franchise tax returns. By notice dated June 22, 1988, the Department of Revenue and Taxation, State of Louisiana (Department) assessed MB with additional corporate franchise taxes totalling $127,400.71 *1160 for the years 1985, 1986 and 1987.[1] MB filed a petition with the Board of Tax Appeals (Board), alleging that the Department's assessment erroneously included in the franchise tax base "certain federal tax accruals" which should be excluded from the taxable capital of the company under La.R.S. 47:603. After a hearing, the Board rendered judgment in favor of MB and dismissed the assessment.[2] The Department filed a petition for review in the district court, which affirmed the decision of the Board. The Department appealed, and the court of appeal affirmed.[3] Upon the Department's application, we granted certiorari to review the correctness of that decision.[4]
The sole issue before us is whether MB's deferred federal income taxes are excluded from the franchise tax base.
The franchise tax is imposed on corporations doing business in this state. La.R.S. 47:601. The tax is computed based on the corporation's issued and outstanding capital stock, surplus, undivided profits and borrowed capital. La.R.S. 47:602. Borrowed capital is defined in La.R.S. 47:603, which provides in pertinent part:
§ 603. Borrowed capital
As used in this Chapter, "borrowed capital" means all indebtedness of a corporation, subject to the provisions of this Chapter, maturing more than one year from the date incurred, or which is not paid within one year from the date incurred regardless of maturity date....
The following indebtedness shall be excluded:
(1) Federal, state and local tax accruals or taxes due and not delinquent more than thirty days. [Emphasis added].
. . . .
Surplus and undivided profits are defined in La.R.S. 47:605(A), which provides in pertinent part:
§ 605. Surplus and undivided profits
A. Determination of value. For the purpose of ascertaining the tax imposed in this Chapter, surplus and undivided profits shall be deemed to have such value as is reflected on the books of the corporation, subject to examination and revision by the collector from the information contained in the report filed by the corporation as hereinafter provided and from any other information obtained by the collector....
....[P]rovided further that in computing surplus and undivided profits there shall be included all reserves other than those for definitely fixed liabilities, ... such reserves in all cases to be made under rules and regulations to be prescribed by the collector. [Emphasis added].
. . . .
Regulation L.A.C. 61:I.305(A), promulgated by the Department, also addresses surplus and undivided profits:
There must be included in the franchise taxable base determined in the manner heretofore described, all reserves other than those for:
(1) definitely fixed liabilities;

. . . .
No deduction from surplus and undivided profits shall be made with respect to any reserve for contingency of any nature, without regard to whether the reserve is partially or fully funded. Reserves for future liability for income taxes shall *1161 not be excluded from the tax base. Deferred Federal Income Tax accounts may be netted in determining the amount of reserve to be included in the taxable base. Reserve for fixed liabilities shall be included in the taxable base to the extent that they constitute borrowed capital under the provisions of R.S. 47:603 and the regulations issued thereunder. [Emphasis added].
In interpreting the statutes, we begin from the well-settled premise that taxing statutes must be strictly construed against the taxing authority. Collector of Revenue v. Wells Fargo Leasing Corp., 393 So.2d 1244 (La.1981). Where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975), cert. denied, 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976). However, exemptions from taxation are strictly construed and must be clearly, unequivocally and affirmatively established. Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193 (La.1981) (on rehearing); Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958) (on rehearing).
MB contends it is on the accrual basis of accounting, and, as a result, its "accrued federal taxes" are excluded from the definition of borrowed capital under La.R.S. 47:603. The main purpose of the accrual method of accounting is to bring income and deduction items into position with the proper year of economic activity to which the income and deductions relate.[5] The technique by which this is accomplished is to require the accrual and reporting of income items in the year in which the right to receipt arises, and of deductions and credits in the year in which the obligation to pay arises. J. Chommie, The Law of Federal Income Taxation 166 (1968). Under the accrual method of accounting, it is the right to receive an amount and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184, 54 S.Ct. 644, 645, 78 L.Ed. 1200 (1933). Ordinarily, actual receipt and payment is irrelevant to the determination of tax liability. The test is whether all the events have occurred in that year which fix the amount and the fact of the taxpayer's liability. Dixie Pine Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926).
In contrast to the accrual method is the installment sales method under Internal Revenue Code section 453. That section "was enacted to relieve taxpayers who adopted [the installment basis of reporting] from having to pay an income tax in the year of the sale based on the full amount of anticipated profits when in fact they had received in cash only a small amount of the sales price." Commissioner v. South Texas Lumber Co, 333 U.S. 496, 503, 68 S.Ct. 695, 699, 92 L.Ed. 831 (1948). Section 453 "enables a taxpayer to defer paying the tax on gain from a sale made on the installment basis until the year in which he receives payment of each installment." Sun First National Bank v. United States, 221 Ct.Cl. 469, 607 F.2d 1347 (1979) [emphasis added]. "The tax may thereby be spread over the period in which payments of the sales price are made." Trivett v. Commissioner, 611 F.2d 655 (6th Cir.1979).
The record indicates that while MB's books are on the accrual method, it has elected to use the installment method for its accounts receivable. MB's expert witness, Rick Welch, testified:
Basically, under the federal tax laws, although we report income for financial purposes on the accrual basis, prior to the tax reform act of 1986, there was a statutory provision that allowed us to use the installment sale method of accounting with respect to our revolving accounts receivable. The way that it works is, at the end of each year, you *1162 look at the unpaid charges that are on your books. And there is a very specific test that you go through. The regulations on the Internal Revenue code provide for a statistical sampling of your accounts receivable. We do a hundred percent at the end of every year. We look at each one of our accounts, and based upon the regulations that the I.R.S. has issued, we determine whether or not it's eligible to be deferred, whether or not, some of them you can't determine whether they can be deferred, and then, some are eligible. We total the total eligible accounts, the percentage that that represents of our total accounts receivable, is then deferred based upon our gross profit percentage for that year. But it's looked at at the end of each year. It's not, you put it out there one time and then it stays out there, because the next year, I will collect those receivables, and I will pay federal income taxes on those receivables the very next year.
Welch went on to give an example:
When we compute our income tax expense on the books, it's based upon our financial income, so that for financial purposes, we have ten million dollars of income for financial statement purposes. That the statutory tax rate, effective rate is forty-eight percent, and we record 4.8 million dollars of income tax expenses on our books. A portion of that 4.8 million dollars will be paid and included in the current period's income tax return. Let's say that the timing difference from the deferred taxes is two million dollars. So for income tax purposes, I will actually include in my income tax return eight million dollars of income, and pay 48 per cent on that. The deferred tax accrual is the other, is the accrual on 2 million dollars at 48 percent, so its not the same number; it's two different numbers.
From the evidence and testimony in the record, it is clear MB is not liable for income taxes on its receivables until those receivables are actually collected. Thus, we conclude that the taxes at issue are deferred taxes under the installment sales method, not tax accruals, because the amount and fact of MB's tax liability has not been fixed at the time of sale.
Turning to the franchise tax statutes, we believe it is clear that the exclusion for "tax accruals" under La.R.S. 47:603 must be strictly construed to apply only to taxes accrued under the accrual method and not to taxes deferred under the installment sales method. Tax accruals are true indebtedness, since liability for those taxes has attached at the time of sale, regardless of whether payment is ever received. By contrast, deferred taxes under the installment sales method are mere contingent or potential liabilities. Under that method, the taxpayer is only liable for income taxes as each installment is paid. If the installments are not paid, the taxpayer under that method would never be liable for the deferred taxes. In addition, such an interpretation harmonizes with La.R.S. 47:605, which excludes reserves for "definitely fixed liabilities" from surplus and undivided profits. Accrued taxes are definitely fixed liabilities in that liability for the tax attaches at the time the sale is made. Liability for deferred taxes, on the other hand, does not attach until the installment payment is received, and may never attach if the payment is never received.
Since MB's taxes are deferred taxes under the installment sales method, rather than true accrued taxes, we hold they do not fall under the exclusion for accrued taxes in La.R.S. 47:603. Any reserves set aside by MB for these deferred taxes are not reserves for definitely fixed liabilities under La.R.S. 47:605 and fall within the definition of surplus and undivided profits. Accordingly, these amounts must be included in the franchise tax base.
This holding is in line with other cases which have addressed this issue. In National Manufacturing & Stores Corp. v. Fontenot, 86 So.2d 238 (La.App. 1st Cir. 1956), a taxpayer using the installment sales method attempted to exclude from the franchise tax base its "unrealized profits" on installment sales and a "reserve for federal income taxes" on unrealized profits. The court, in an opinion written by Judge Tate, rejected the deductions:
[T]he Collector correctly disallowed National's deduction from the basis of the tax of the sum of $899,296.91 reserved *1163 for future income tax liability to be owed on such unrealized profits. National estimates such reserve according to current federal income tax rates. It does not claim that the current income tax rate will be applicable on the profits when realized, or that any federal income tax liability will accrue until such profits are actually realized. The reserve is not for "definitely fixed liabilities," nor is it within the category of any other reserve exempted from the franchise tax base under LSA-R.S. 47:605, subd. A. 86 So.2d at 241.
In Broadwell Realty Corp. v. Coble, 291 N.C. 608, 231 S.E.2d 656 (1977), the Supreme Court of North Carolina dealt with the issue of whether a taxpayer who voluntarily elected the installment method of accounting for income tax could deduct deferred, potential state and federal income tax liabilities from its franchise tax base. The court concluded the taxpayer could not:
The allowable deductions from the franchise tax base under G.S. 105-122(b) are clear and unambiguous. The permissible deductions, relevant to this case, are "definite and accrued legal liabilities" and "taxes accrued." The amounts which plaintiff is attempting to deduct are not definite and accrued liabilities. The sums are not definitely fixed in amount and plaintiff is not presently liable for the amounts. Likewise, there is no permissible deduction for the amounts sought to be deducted as "taxes accrued." Neither the amount of, nor the liability for, such deferred taxes is fixed. Thus, under the plain meaning of G.S. 105-122(b), the deduction claimed by plaintiff for deferred income taxes was properly denied. 231 S.E.2d at 659.
The taxpayer in Broadwell also contended that the different treatment of accrual basis taxpayers and installment sales method taxpayers violated the equal protection clause. The court rejected this argument:
The different treatment between plaintiff and those taxpayers reporting income under the accrual method is based upon a rational reason. Those taxpayers reporting under the accrual method are actually liable, at the time the franchise tax return is filed, for the income taxes arising from the installment sales. Those taxes are "accrued." A cash-basis taxpayer reporting under the installment sales method is liable for income taxes as each installment is paid. Such a taxpayer may never be liable for any taxes arising from the installment sales, and thus may never be required to pay the amounts listed as deferred taxes. 231 S.E.2d at 662 [citation omitted].[6]
Likewise, the Supreme Courts of Michigan, Ohio and Mississippi have refused to allow deductions from the franchise tax base for deferred income taxes. See National-Standard Co. v. Department of Treasury, 384 Mich. 184, 180 N.W.2d 764 (1970); Kroger Co. v. Bowers, 3 Ohio St.2d 76, 209 N.E.2d 209 (1965); Trunkline Gas Co. v. Mississippi State Tax Commission, 238 Miss. 591, 119 So.2d 378 (1960).
In sum, we hold MB's deferred federal income taxes under the installment sales method are not "tax accruals" under La. R.S. 47:603, nor are they reserves for definitely fixed liabilities under La.R.S. 47:605. As a result, these taxes fall within the definition of surplus and undivided profits and are properly included within the franchise tax base. The Board and lower courts erred in holding otherwise.
It is unclear whether MB sought a redetermination of the amount of the assessment in its appeal to the Board. In any event, the Board, having concluded that deferred federal income taxes were excluded from the franchise tax base, did not reach the correctness of the assessment. Therefore, we consider it proper to remand the case to the Board to hold a hearing on *1164 this issue and to enter an appropriate judgment.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The case is remanded to the Board of Tax Appeals for further proceedings not inconsistent with this opinion, with the parties given leave to seek judicial review of the Board's decision, pursuant to La.R.S. 47:1434 et seq. All costs are assessed against Goudchaux/Maison Blanche.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent. The tax laws plainly exclude federal tax accruals from indebtedness for purposes of computing corporate franchise taxes. La.R.S. 47:603 (West 1990). The taxpayer adopted and consistently followed the accrual method of accounting in its business. This method of accounting is universally accepted and has been sanctioned by Louisiana law and the accounting profession. According to the undisputed expert testimony, the amounts which the taxpayer sought to exclude fall within the definition of "tax accrual" when that term is interpreted according to its received meaning in the profession. La. Civ.Code art. 11 (1988); La.Civ.Code art. 15 (1870). I see nothing in the legislated law that permits this court or the collector to treat a tax accrual as something other than a tax accrual.
NOTES
[1] The tax obligation was itemized as follows:

TYPE OF TAXPERIOD CORP. FRANCHISE CORP. FRANCHISE CORP. FRANCHISE
 01/85 01/86 01/87
Tax Due $16,963.00 $36,443.00 $ 35,283.00
Interest to 7/15/88 $10,389.84 $16,854.89 $ 11,466.98
Total Amount Due and Payable
 __________ __________ ___________
 $27,352.84 $53,297.89 $ 46,749.98
PAY THIS TOTAL AMOUNT $127,400.71
 ___________

[2] At the hearing, MB stipulated it owed a portion of the assessment ($5,100.00 in taxes, plus interest). That amount is not before us.
[3] 577 So.2d 169 (La.App. 1st Cir.1991).
[4] 580 So.2d 914 (La.1991).
[5] The accrual method is distinguished from the cash method, the other major type of accounting. Under the cash method, income is reported for the year in which the amounts are actually or constructively received, and deductions are taken for the year in which actually paid. See Mertens Law of Federal Income Taxation § 12A.01.
[6] Although Broadwell involved a cash-basis taxpayer reporting under the installment method, we see no difference between such a taxpayer and an accrual basis taxpayer reporting under the installment method. Once the taxpayer elects to include sales under the installment method, he is not liable for taxes until he receives payment of each installment, regardless of whether he is on the cash basis or the accrual basis for other purposes.